UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TRACY RAYANNA SHEDD, ) | |
| *Plaintiff*, ) | |
| ) | Case No: 3:23-cv-00073 |
| v. ) | |
| ) | Judge Christopher H. Steger |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

**I.    Introduction**

Plaintiff Tracy Rayanna Shedd seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f, for the limited period of August 5, 2014, through August 31, 2019. [*See* Doc. 1]. The parties consented to entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 8].

Each party filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Docs. 13, 14,[1] 18]. For reasons that follow, Plaintiff's request for relief [Docs. 13, 14] will be **DENIED**, the Commissioner's request for relief [Doc. 18] will be **GRANTED**, and Judgment will be entered **AFFIRMING** the Commissioner's decision.

---

[1] Plaintiff's filings are styled as a Motion for Summary Judgment [Doc. 13] and Plaintiff's Memorandum of Law in Support of a Motion for Summary Judgment [Doc. 14], consistent with the practice prior to the effective date of the new Supplemental Rules.

## II. Procedural History

On September 22, 2014, Plaintiff applied for benefits under the Act. [Doc. 18 at 1]. Plaintiff alleges disability as of August 5, 2014. (Tr. 604). Plaintiff's claims were denied initially, but the Appeals Council remanded the case. [Doc. 18 at 1]. After a new hearing before the ALJ, Plaintiff's claim was again denied in September 2018. *Id.* Based on joint motion of the parties, this Court remanded Plaintiff's case in May 2021. *Id.* At a telephonic hearing (due to the COVID-19 pandemic) on September 28, 2022, in which Plaintiff and her attorney both participated, Administrative Law Judge Suhirjahaan Morehead ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 604, 619, 635-48). The ALJ then rendered her decision, finding that Plaintiff was not disabled prior to August 31, 2019, but became disabled on that date. (Tr. 618).

After the ALJ's decision became the final decision of the Commissioner, Plaintiff filed her Complaint [Doc. 1] on February 24, 2023, seeking judicial review under § 405(g). The parties filed competing briefs and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 5, 2014, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).

3. Since the alleged onset date of disability, August 5, 2014, the claimant has had the following severe impairments: status post multiple gunshot wounds with post traumatic arthritis of the left wrist, right palm and right wrist; rotator cuff injury to the right shoulder; chronic obstructive pulmonary disease (COPD); obesity; depression; panic disorder without agoraphobia; and post-traumatic stress disorder (PTSD) (20 C.F.R. §§ 404.1520(c), 416.920(c)).

4. Since August 5, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. After careful consideration of the entire record, I find that since August 5, 2014, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the following: the claimant can occasionally push and pull with the left arm; she can occasionally balance, stoop, kneel, crouch and crawl; she can perform frequent but not constant handling, fingering and feeling with the bilateral hands and can do no overhead reaching with her right upper extremity; she must avoid concentrated exposure to pulmonary irritants such as dust, smoke, fumes, etc.; she must avoid concentrated exposure to industrial hazards (unprotected heights and moving machinery, etc.) but is not limited in exposure to ordinary hazards (such as boxes on a floor, doors ajar, other employees in the vicinity, etc.); and she is limited to infrequent (defined as approximately 10 to 20 percent of the workday) contact or interaction with the public, coworkers and supervisors.

6. Since August 5, 2014, the claimant has been unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

7. Prior to the established disability onset date, the claimant was a younger individual age 18-49. On August 31, 2019, the claimant's age category changed to an individual of advanced age (20 C.F.R. §§ 404.1563, 416.963).

8. The claimant has a limited education (20 C.F.R. §§ 404.1564, 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568, 416.968).

10. Prior to August 31, 2019, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. Beginning on August 31, 2019, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966).

12. The claimant was not disabled prior to August 31, 2019, but became disabled on that date and has continued to be disabled through the date of this decision

(20 C.F.R. §§ 404.1520(g), 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2014, the date last insured (20 C.F.R. §§ 404.315(a), 404.320(b)).

(Tr. at 607-18).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to

her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v.*

*Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.     Analysis

Plaintiff contends that the ALJ "failed to properly weigh the opinion of treating physician Thomas Cox, M.D." [Doc. 14 at 10].

While new rules have been adopted for claims filed after March 27, 2017, Plaintiff's claim was filed September 22, 2014. [Doc. 14 at 11]. Thus, the treating provider rule applies. If a treating physician's opinion as to the nature and severity of impairment is: (1) well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In making this determination, the appropriate weight to be given to a treating physician's opinion should be based on the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the entire record, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of [their]] case, especially "where a claimant knows that [their] physician has deemed [them] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that their physician has deemed them disabled and thus "might be especially bewildered when told by an administrative bureaucracy that [they] [are] not . . . .").

Plaintiff claims the ALJ failed to give good reasons to support giving little weight to Dr. Cox's April 2018 medical source opinion.[2] [Doc. 14 at 13]. Specifically, Plaintiff claims that the ALJ erred by: (1) labeling Plaintiff's treatment as "conservative"; (2) finding Dr Cox's opinion to be inconsistent with Plaintiff's activity level; and (3) discounting Dr Cox's opinion because he is a family doctor, not an orthopedic specialist. *Id.* at 13-15. The Court will address these issues in turn.

### A. "Conservative" Treatment

The ALJ stated that Dr. Cox's opinion "is not supported by Dr. Cox's own treatment, which was conservative, as it consisted primarily of medication management and steroid injections with periods of noted improvement with treatment." (Tr. 614). Plaintiff claims that her "treatment was anything but conservative." [Doc. 14 at 13].

---

[2] Dr. Cox also completed a medical source opinion in August 2022. As none of Plaintiff's complaints appear related to the ALJ's treatment of that opinion, the analysis will focus on the April 2018 opinion.

Plaintiff cites to a selection of treatment records ranging from rotator cuff surgery in 2008 to a shoulder injection in February 2018. *Id.* However, nothing she cites is inconsistent with the ALJ's reasons for discounting Dr. Cox's opinion. Plaintiff's citations mostly highlight pain at various times and some steroid injections. *See id.* Plaintiff also highlights some range of motion issues and tenderness. *Id.* But that information is perfectly consistent with the ALJ's reasoning. Additionally, as noted by the ALJ, Plaintiff did experience periods of noted improvement with the injections. (Tr. 614 (citing Tr. 522, 528-32, 549-54, 593-94)).

Plaintiff cites *Padilla v. Saul* for its discussion[3] of *Underwood v. Soc. Sec. Admin.*, to support her claim that her treatment was not conservative. *Padilla v. Saul*, No. 3:18-CV-580-CHB, 2020 WL 1651227, at *5 (W.D. Ky. Apr. 3, 2020); *Underwood v. Soc. Sec. Admin.*, No. 3:16-CV-00546, 2017 WL 128518, at *8 (M.D. Tenn. Jan. 11, 2017). In *Underwood*, the court found that "multiple surgeries and pain medications, physical therapy, and spinal injections" did not equal conservative treatment. No. 3:16-CV-00546, 2017 WL 128518, at *8 (M.D. Tenn. Jan. 11, 2017).

However, *Padilla* actually undermines Plaintiff's claim of error by the ALJ. The plaintiff in *Padilla* took Skelaxin for back pain as well as "NSAIDs, muscle relaxants, and neuropathics including Gabapentin," did physical therapy for nine months, and had two spinal steroid injections. No. 3:18-CV-580-CHB, 2020 WL 1651227, at *5. The court in *Padilla* found the plaintiff's treatment to be conservative, explicitly distinguishing *Underwood*. *Id.* The court further stated, "In essence, Plaintiff's objection to the weight ascribed to [the physician's] opinion asks this Court to re-weigh the evidence, which the substantial evidence standard prohibits." *Id.*

The Court finds that the treatment here is closer to that found in *Padilla* than to that found in *Underwood*. *Underwood* involved multiple surgeries, physical therapy, spinal injections, and

---

[3] *Padilla* discusses the facts in *Underwood* because the plaintiff in *Padilla* cited *Underwood* in support of her argument.

various medications. Here, there was one historical[4] surgery, no physical therapy, shoulder injections, and various medications. Thus, in three out of four categories the treatment here is more conservative than that in *Underwood*,[5] and is equally conservative in the fourth. In contrast, *Padilla* involved no surgery but did involve physical therapy, spinal injections, and various medications. Thus, the treatment here is less conservative in one category, more conservative in two categories, and equally conservative in one category. Therefore, using the cases cited by Plaintiff, the Court finds that it is reasonable to find Dr. Cox's treatment to be conservative.

The Court finds Plaintiff's claim to be unpersuasive because the ALJ's labeling of Plaintiff's treatment by Dr. Cox as conservative is supported by substantial evidence.

B.  **Inconsistent with Plaintiff's Activity Level**

Plaintiff claims the ALJ erred in finding that "Dr. Cox's opinion is not consistent with Plaintiff's activity level, including being able to prepare simple meals, do laundry, bathe and dress herself, and shop for groceries with her boyfriend." [Doc. 14 at 14 (cleaned up)]. Plaintiff takes particular exception to the ALJ finding that Dr. Cox's opinion is not consistent with her taking custody of a child for two years. *Id.*

Dr. Cox opined that Plaintiff could never lift one or more pounds, never bend, never push/pull, never use hands for gross manipulation, and never use hands for fine manipulation. (Tr. 598). Plaintiff's ability to prepare simple meals, do laundry, bathe and dress herself, and shop for

---

[4] The surgery predates the alleged onset date by six years and appears to predate Dr. Cox's treatment of Plaintiff as well.

[5] The Court considers shoulder injections to be more conservative than spinal injections. Spinal injections require significant specialized training while shoulder injections are commonly performed by primary care providers in an office setting. *Compare, e.g.,* Lumbar Epidural Steroid Injection, Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/22091-lumbar-epidural-steroid-injection ("healthcare providers performing the injection must have significant specialized training") *and* What Type of Doctor Gives Epidural Injections?, New York Spine Specialist, https://newyorkspinespecialist.com/what-type-of-doctor-gives-epidural-injections/ *with* Efficacy of Musculoskeletal Injections by Primary Care Providers in the Office: A Retrospective Cohort Study, International Journal of General Medicine, v. 6, 2013, published online April 15, 2013, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3633578/.

groceries with her boyfriend directly undermines Dr. Cox's claims. These daily activities necessarily involve multiple things that Dr. Cox said Plaintiff could *never* do.

Regarding Plaintiff's caregiving, Plaintiff states that the ALJ's reasoning is improper and illogical because "the record demonstrates that Plaintiff did not begin caring for her family member's child until October 2020." [Doc. 14 at 14]. The Court disagrees with Plaintiff's assertion. While Plaintiff's caregiving falls outside the window of disability inquiry in this case, there is no suggestion in the record that Plaintiff was disabled for a time that ran through August 31, 2019, but then made significant improvement in her condition prior to October 2020. The ALJ is merely citing to Plaintiff's activities post-opinion to show how Plaintiff's activities are incongruous with the limitations opined by Dr. Cox. This is entirely logical if, since the window of disability inquiry, Plaintiff's impairments have gotten worse or remained the same—which is the factual scenario presented here.

Therefore, the ALJ's discounting of Dr. Cox's opinion based on Plaintiff's activities is supported by substantial evidence.

### C. Treating Provider Not an Orthopedic Specialist

In the strongest of her claims, Plaintiff asserts that discounting Dr. Cox's opinion because he is not an orthopedic specialist is error. [Doc. 14 at 14-15]. Plaintiff states that as a general practice doctor, Dr. Cox "is more than qualified to opine on musculoskeletal impairments." Plaintiff also highlights the fact that the ALJ assigned two State Agency medical consultants' opinions "great weight" even though neither is an orthopedic specialist.[6] [Doc. 14 at 15].

The Court agrees with Plaintiff that Dr. Cox is more than qualified to opine on musculoskeletal impairments. But that does not mean that an ALJ cannot find an orthopedic

---

[6] Plaintiff states that Nathaniel Briggs, M.D., is a preventive medicine physician and that Dr. Reeta Mistra, M.D., is a pediatrician. [Doc. 14 at 15].

specialist to be somewhat more persuasive due to extra training and experience with musculoskeletal impairments. The regulations specifically state that specialization generally increases the weight, or persuasive value, given to a medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). There are two key points worth discussing: (1) what the persuasive value is being compared to; and (2) the degree to which the persuasive value is discounted.

Regarding the former, Plaintiff's argument is very strong if the ALJ discounted Dr. Cox's opinion in comparison to Drs. Briggs and Mistra. However, Plaintiff's argument is far weaker if the ALJ discounted Dr. Cox's opinion because he was a general practice doctor rather than an orthopedic specialist. Language within the regulations contemplates both types of comparisons. *Compare, e.g.,* 20 C.F.R. § 404.1527(c)(2)(i)-(ii) *with* (c)(5).[7] So which type did the ALJ employ here? There is nothing in the ALJ's opinion to definitively answer that query. However, it is reasonable to read the ALJ's opinion as employing a comparison against the hypothetical idea of Dr. Cox as an orthopedic specialist.

First, no language in any of the other paragraphs addressing medical source opinions uses language comparing opinions to those of other sources. Second, Dr. Cox is the only medical source opinion where the ALJ even discusses specialization. While Plaintiff sees this discrepancy as improper, it is reasonable to chalk it up to the Dr. Cox's status as a treating provider. Dr. Cox's opinion is the only treating medical source opinion in this case and the regulations explicitly required the ALJ to consider Dr. Cox's specialization. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The regulations did not require the ALJ to consider specialization for any of the other medical sources. *Id.* Thus, it is less likely the ALJ was citing Dr. Cox's non-specialization to show why he

---

[7] §(c)(5) is specifically about specialization and illustrates comparison with an existing source, not just a hypothetical source who is not a specialist. However, the scenario in this case does not match the scenario discussed in § (c)(5). The scenario in § (c)(5) is about a specialist versus a non-specialist. The facts in this case involve a non-specialist versus two other non-specialists.

preferred other medical source opinions. Rather, it is reasonable to conclude that the ALJ was merely fulfilling a requirement of the regulations and considering Dr. Cox's specialization versus non-specialization in assigning persuasive weight.

More important is the degree to which Dr. Cox's persuasiveness was discounted. As noted above, Dr. Cox, general practitioner, is qualified to opine on musculoskeletal impairments. Nonetheless, it would be inherently reasonable for the ALJ to find Dr. Cox, general practitioner, five percent less persuasive than Dr. Cox, orthopedist. But it would be quite unreasonable for the ALJ to find Dr. Cox, general practitioner, 95 percent less persuasive than Dr. Cox, orthopedist.

To what degree does the ALJ discount Dr. Cox's opinion here? In his sentences supporting the weight he assigned to Dr. Cox's opinion, the ALJ first cites Dr. Cox's own treatment. (Tr. 614). The ALJ then buttressed this rationale with some specifics. *Id.* Second, the ALJ discusses consistency with Plaintiff's activity level, again elaborating on specifics. *Id.* Last, the ALJ cites Dr. Cox's non-specialization. *Id.* It is reasonable to find that the ALJ discussed the more important factors first. It is also reasonable to find that the ALJ devoted greater discussion to the more important factors.[8]

While it is possible that specialization carried significant weight in the ALJ's assessment of Dr. Cox's opinion, it seems much more likely that the ALJ briefly included it at the end of his reasoning because it was the least important factor and considering specialization was expressly required by the regulations. There is evidence here that could support a different conclusion. However, there is also evidence to support the ALJ's treatment of Dr. Cox's opinion, and the rationale supporting that approach appears more probable. Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's

---

[8] While each factor was discussed in one sentence, the sentences for the first two factors were significantly longer and contained more details.

findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).

Therefore, the ALJ did not err in weighing Dr. Cox's opinion his decision is supported by substantial evidence.

**VI.     Conclusion**

Having reviewed the administrative record and the parties' briefs, Plaintiff's request for relief [Docs. 13, 14] will be **DENIED**, the Commissioner's request for relief [Doc. 18] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE